Kenneth HEADRICK, Jr., Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Aug. 16, 1974.

Certiorari Denied by Supreme Court
Jan. 13, 1975.

**404**

Carl Koella, Jr., and Eugene B. Dixon, Maryville, for plaintiff-in-error.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Kenneth Deatherage, Dist. Atty. Gen., Kingston, for defendant-in-error.

## OPINION

OLIVER, Judge.

Represented by retained counsel, without objection Headrick was tried simultaneously and convicted upon two separate indictments, one charging unlawful possession of methylenedioxy amphetamine (MDA) for the purpose of sale (T.C.A. § 52–1413(c), and the other charging unlawful possession of more than one-half ounce of marijuana for the purpose of sale (T.C.A. § 52–1422). He was sentenced to not less than five nor more than 10 years in the penitentiary under the MDA indictment (T.C.A. § 52–1432(a)(1)(A), and to not less than one nor more than five years in the marijuana case (T.C.A. § 52–1432(a)(1)(F). Fines assessed by the jury will be referred to later. He is now before this Court upon his appeals in the nature of a writ of error.

We first consider the defendant's Assignments of Error assailing the sufficiency of the evidence to warrant and support the verdicts of the jury. In doing so, we are bound by the rules stated and restated almost countless times by the Supreme Court of this State and by this Court concerning review of the evidence in criminal cases when its legal sufficiency is challenged on appeal. Shadden v. State, 2 Tenn.Cr.App. 450, 455 S.W.2d 164.

Late at night on February 13, 1973, officers of the Blount County Sheriff's Department and Maryville Policemen, armed with a search warrant, searched the apartment rented to the defendant and James Sauls. The defendant and James Ayres, a friend of the defendant visiting in the apartment, were present. Twenty-two bags of marijuana were found in a kitchen drawer. Aso found in the kitchen were some black pills which turned out to be caffeine and some green and white capsules which also tested negative for controlled substances, cigarette papers, a "roach holder"—a device to hold the butt of a marijuana cigarette and contained one when it was found, and a pair of balance scales. The defendant was then arrested and advised of his constitutional rights.

In the pocket of a shirt hanging in the closet of one of the bedrooms, a room which the defendant had said was his, the officers found a small amount of MDA sufficient for approximately six to 10 doses. Another bag of marijuana was found in the same bedroom.

When the officers announced their intention to arrest both the defendant and Ayres, Headrick told them that Ayres was only a visitor there and had nothing to do with it and that all the drugs found in the apartment were his own. Ayres was released after being held overnight.

When the black caffeine pills were found the defendant told two of the officers they were "speed," and to another officer he claimed they were LSD. He claimed the green and white capsules were

in the apartment when he rented it and were not his.

Testifying in his own defense, Headrick said that neither the shirt the MDA was found in nor the bedroom where it was found was his. He said the shirt belonged to his roommate James Sauls; that he did not own any of the marijuana and did not take it into the apartment; and that neither the MDA nor any of the seized articles were his, with the exception of the cigarette papers which he claimed he used for tobacco only. He implied that the marijuana belonged to his roommate, but he was not sure of that.

James Sauls testified that the bedroom in which the MDA was found was his. He said he saw the marijuana in the kitchen drawer about 9:00 o'clock the morning preceding the search and had seen the MDA four or five days previously; that he knew the owner of the drugs and that it was not the defendant; and when asked if the drugs were his he invoked the Fifth Amendment and refused to answer and also declined to identify the owner.

Unquestionably this record abundantly justified the jury in finding the defendant guilty upon each of the indictments. Obviously he has failed to carry his burden of demonstrating here that the evidence preponderates against the verdicts and in favor of his innocence.

Wholly unmeritorious is the Assignment that the court erred in declining to charge the defendant's special request: "Property found in an individual living area, such as a bedroom is presumed to be the property of the person occupying the area."

■ Of course we recognize the established principle of law that, in the absence of proof on the subject, there is a presumption that contraband found upon the premises of the defendant or of which he has control belongs to him and is in his possession. Davidson v. State, 223 Tenn. 193, 443 S.W.2d 457; Turner v. State, 216 Tenn. 714, 394 S.W.2d 635; Hatchett v. State, 208 Tenn. 399, 346 S.W.2d 258;

Younger v. State, 206 Tenn. 588, 335 S.W. 2d 828; Whited v. State, Tenn.Cr.App., 483 S.W.2d 594.

■ But in this case there is no room for that presumption because, as noted, protesting the arrest of his friend Ayres, the defendant told the officers all the drugs belonged to him and Ayres had nothing whatever to do with it. Thus, by his own statement, nothing could be clearer than that his guilt in these cases does not rest upon the stated presumption. The trial court did not err in declining to charge the requested presumption rule. And the jury obviously rejected altogether the defendant's denials on the witness stand.

■ Also baseless is the contention the trial judge erroneously permitted introduction of the caffeine pills in evidence. There is nothing in this record even to suggest, much less to demonstrate, that his right to a fair and impartial trial was prejudiced by admission of that unprohibited material.

At oral argument before this Court, one member raised a question as to the legality of indicting and convicting the defendant separately for possession of the marijuana and the methylenedioxy amphetamine (MDA), found and confiscated by the officers in the same raid at the same place. Thus, with leave of the Court, the defendant and the State have filed a supplemental brief, although the question, whether it is permissible to charge a defendant with multiple drug possession offenses when different drugs are seized on a single occasion, was not raised in the new trial motions. So we address the question.

As noted at the outset, possession for resale of each of the drugs charged in the separate indictments is proscribed by different sections of the Drug Control Act of 1971, and a different and separate punishment is prescribed for each offense, such possession of MDA being punished much more severely than like possession of marijuana.

In Williams v. State, Tenn., 503 S.W.2d 109 (1973), wherein the defendant was charged and convicted separately for three separate sales of marijuana to a police undercover agent the same night, the Court held, disagreeing with this Court, that the three sales constituted three separate offenses punishable as such. However, the Court agreed with this Court that the error in sentencing the defendant to a greater term on his retrial than he received in the first trial was correctable by ordering that all three sentences be served concurrently, a question which is not involved in the case before us.

In Jerome Williams v. State, an unpublished opinion filed at Knoxville on the same day as the opinion in Phillip Williams v. State, supra, the Court approved the defendant's conviction in two heroin-selling cases based on sales to a police undercover agent four days apart, and approved the consecutive separate sentences.

In so holding in the two *Williams* cases, our Supreme Court simply followed the Supreme Court of the United States. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1931), affirming the defendant's separate conviction and sentence for each of several unlawful successive narcotic sales to the same person in violation of two separate sections of the Harrison Anti-Narcotic Act, holding that each sale was a separate offense, the Court said:

"Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

The Court adhered to *Blockburger*, supra, in Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), saying "The considerations advanced in support of the vigorous attack against it have left its justification undisturbed, nor have our later decisions generated counter currents."

■ But the present drug *possession* cases are factually different from those referred to, in that those cases involved separate positive *acts* of illicit traffic in drugs, separate unlawful sales. Because of this crucial distinction, the cases at hand are controlled by *Wells and Wells v. State,* an unpublished opinion of the Supreme Court of this State filed at Jackson May 6, 1974. In the *Wells* case the defendants were convicted upon three separate joint indictments (resulting from a single raid on their home by officers), each of which charged them with unlawful *possession* for sale of a single drug (heroin, cocaine and marijuana, respectively) proscribed by different sections of the Drug Control Act of 1971. Affirming this Court, the Supreme Court held that each defendant committed only one crime, affirmed their conviction and sentence only for the greater offense of heroin possession and dismissed the other two convictions. The Court said: "The record nowhere shows that the possession of each substance was acquired by a separate act. The possession, on the contrary, was a single possession and a single act."

■ In passing, it is well to mention the rule that separate sentences adjudged against a defendant in a trial run concurrently in the absence of any specific order by the trial court. Howe v. State ex rel. Pyne, 170 Tenn. 571, 98 S.W.2d 93.

■■ There is no merit in the defendant's complaint that the sentences are so excessive as to indicate the jury was prejudiced against him. Where, as in these cases, the sentence imposed is within the applicable statutory limits of punishment, a claim that it was corruptly motivated by passion, prejudice and caprice on the part of the jury is untenable. Howard v. State, Tenn.Cr.App., 506 S.W.2d 951.

■ Finally, to avoid possible future misunderstanding, we call attention to a conflict between the Bill of Exceptions and the trial court Minutes with reference to

the two sentences. The Bill of Exceptions shows that in the marijuana case the jury fixed the defendant's punishment at five years in the penitentiary and a fine of $3,000, and that in the MDA case the jury assessed a fine of $9,000 in addition to imprisonment for 10 years in the penitentiary. The Minute entries reflect the convictions and the imprisonment but do not mention the fines. In case of such a conflict, the law is settled that the recital in the Bill of Exceptions prevails. Church v. State, 206 Tenn. 336, 355, 333 S.W.2d 799; Helton v. State, 195 Tenn. 36, 255 S.W.2d 694; Percer v. State, 118 Tenn. 765, 103 S.W. 780; Bailey v. State, Tenn.Cr.App., 479 S.W.2d 829.

Accordingly, the defendant's conviction for possession of methylenedioxy amphetamine (MDA) for sale and his sentence of five to 10 years in the penitentiary and the fine of $9,000 are affirmed, and his conviction for the lesser offense of marijuana possession is reversed and that charge is dismissed.

GALBREATH and MITCHELL, JJ., concur.