James Charles ELLIS and Ashley Tate, Plaintiffs in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Aug. 31, 1976.

Certiorari Denied by Supreme Court Nov. 29, 1976.

Jay Fred Friedman, Memphis, for plaintiffs in error.

R. A. Ashley, Jr., Atty. Gen., Robert H. Roberts, Advocate Gen., Nashville, Richard S. McNeese, Asst. Dist. Atty. Gen., Leland M. McNabb, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

## OPINION

DWYER, Judge.

This appeal with accompanying assignments of error flows from the convictions of plaintiffs-in-error, James Charles Ellis and Ashley Tate, on indictments for committing the offenses of possessing lysergic acid diethylamide, hereafter referred to as L.S.D., with intent to sell resulting in punishment of confinement for not less than five nor more than ten years and possessing marihuana with intent to sell resulting in punishment of confinement for not less than one year nor more than five years. The two indictments were consolidated for trial, the jury returned verdicts of guilty on both offenses and the trial court ordered the sentences to be served concurrently. We will subsequently refer to the plaintiffs-in-error by name or as the defendants.

We will narrate the evidence as found from our review of this record.

Four officers of the Metro Narcotic Squad of Shelby County searched Apartment No. 1 located at 1966 Philsar in the City of Memphis on November 5, 1973, under the authority of a search warrant which had been issued that date around 7:50 p. m. Upon entering the apartment the officers found the defendant, Ellis, and a female companion and observed a "nickel" bag (street vernacular for five dollars worth) of marihuana on a coffee table in front of a couch where Ellis had been sitting. They then searched the two bedrooms of the apartment and in a dresser drawer in the south bedroom discovered the following items: sixteen "lids" (a lid equals an ounce) of marihuana plant material; eighty-eight "hits" (windowpanes, film-like squares containing the drug) of L.S.D. in a small vial; a title to a car registered to Ellis; and a small medicine bottle containing a non-controlled substance with the defendant Tate's name thereon. In the closet in the south bedroom a black jacket with a fur collar was found to contain a "lid" of marihuana. One of the arresting officers testified that Ellis asked him to get this same jacket for him when the officers took him into custody and that Ellis wore the jacket to the police station. No incriminating evidence was found in the north bedroom. At the Metro Narcotics Division Ellis gave his address as being 1966 Philsar, Apartment No. 1.

The defendant, Tate, surrendered himself to the custody of the Metro Narcotics officers on November 7, 1973. At that time he made no statement other than listing his address as 1966 Philsar, Apartment No. 1. There was also evidence by the state that Tate had been billed for the utilities at the apartment from May, 1971 to January, 1974.

The substance in the vial discovered in the apartment as outlined above was subsequently proved to be the controlled substance of L.S.D.

The defendant, Tate, testifying in his own behalf, asserted that the apartment was his, but that for two to three weeks prior to its search he had been visiting in Mississippi and that the apartment had been used as a bachelor's "pad" by many of his friends, who had their own keys. In short, he testified that he had not been in possession of the contraband and that it could have been left there by one of the key holders; that he occupied the north bedroom; that Ellis had lived there with him in 1972; and that Ellis owned an automobile that corresponded with the title found in the dresser drawer.

Tate offered witnesses who supported his testimony as to his whereabouts prior to the search.

The defendant, Ellis, testifying in his own behalf, related that he had lived in the apartment, but had moved in 1972 and was living in Mississippi at the time of his arrest. He further related that on the day of his arrest he was visiting in the apartment with his girl friend when the police arrived to search the premises; that he had kept a key to the apartment, but had no knowledge whatsoever of the seized contraband; that a few minutes prior to the arrival of the narcotic officers, two men and three women had been in the apartment; that the title to his car had been left there when he had moved; and he denied that the jacket containing the marihuana was his.

The defendants' first assignment of error is that the trial court erred in overruling defendants' motion for a directed verdict of acquittal. They reason that Ellis being present does not necessarily mean he was in possession of the controlled substances, with reliance on *Dishman v. State*, 3 Tenn.Cr. App. 725, 460 S.W.2d 855 (1970). They further reason that Tate not being there and evidence that he had not been there for weeks refutes any theory of possession of the drug as to him.

█ We think under the facts as narrated the jury accredited these circumstances as to defendant, Ellis: (1) Ellis was in the apartment with an opportunity to be in control of the premises; (2) an ounce of marihuana was on the table in front of him; (3) a jacket he asked for and wore on his transportation to headquarters was his and had contained an ounce of marihuana; (4) the title to a car registered to him was found in the dresser drawer, along with L.S.D. and more marihuana; (5) his acknowledgment that he had lived there and had a key to the apartment; and (6) he gave the apartment as his address when placed in custody. We consider these facts to be more than adequate to support the jury's inference of possession with the intent to sell. *Berry v. State*, 4 Tenn.Cr.App. 592, 474 S.W.2d 668, 670 (1971); *Peters v. State*, Tenn.Cr.App., 521 S.W.2d 233, 235 (1974).

As to defendant, Tate, we think the jury accredited these circumstances: (1) Tate had been paying the bill for the use of the utilities at the apartment; (2) he admitted living there prior to the date of search; (3) a medicine bottle with Tate's name on it was found in the dresser drawer which contained both L.S.D. and marihuana; and (4) he gave the apartment as his address when arrested. These facts and circumstances we think are sufficient to create a presumption that as owner of the premises he had control over or possession of the contraband with the intent to sell. The jury has by its verdict obviously discredited Tate's alibi testimony and that of his corroborating witnesses.

█ Defendant, Tate, further contends that the court erred in not directing a ver-

dict when the trial court declined to allow proof to impeach the affidavit in the search warrant by the use of alibi witnesses. That affidavit reflects that an informant (not named) had seen Tate at the apartment in possession of the drugs within three days prior to its search. The court had overruled his motion to suppress and found the warrant to be proper. We agree. In *Owens v. State*, 217 Tenn. 544, at page 545, 399 S.W.2d 507 at page 508 (1965) the following may be found:

> "Facts stated in affidavit made for purpose of obtaining search warrant are not subject to contradiction at trial for purpose of suppressing evidence secured by means of the warrant, since magistrate determined verity of facts before he issued warrant, and such judicial act is not subject to review unless there were no material facts upon which magistrate based his discretion."

■ Defendant, Tate, also contends that the court erred in allowing into evidence the reading of the affidavit containing the observation of the informant and the argument of the attorney general which referred to that information. With no objection having been made at the proper time in either instance, there is no error. We note that counsel in his opening statement to the jury alluded to what he now complains was error. This assignment is overruled.

■ Their next assignment of error is that the inference permitted by T.C.A. 52–1432(a) is unconstitutional. We have upheld the constitutionality of this provision in *Williams v. State*, Tenn.Cr.App., 506 S.W.2d 193, 194, 196 (1973). It is not unconstitutional for being vague or lacking guidelines or allowing a jury to draw an inference from a given fact. We find no error here. This assignment is overruled.

■ Defendants' third assignment of error is that denial of a continuance to the defendants violated their right to due process of law and to be confronted by the witnesses against them. Defense counsel contends that the absence at trial of the arresting officer, who testified at the preliminary hearing, was a surprise and handicapped his defense. Defense counsel further contends that he had a right to rely on that officer being subpoenaed because his name was endorsed on the indictments as a witness for the state and therefore the trial court should have sustained either his motion for a continuance or his motion for a mistrial.

We are not impressed that the testimony of the unavailable officer was so critical as to sustain a motion for a mistrial. We are equally unimpressed that the officer's absence came as a surprise, since the record reveals that defense counsel should have known this fact at least a month before the trial and could have requested a subpoena for this witness. This officer was only one of four officers who made the search and arrest in this case and he was out of the court's jurisdiction at the time of trial. Under these circumstances, the state is under no obligation to furnish witnesses for the defendants.

An unreported opinion of the United States District Court, Western District of Tennessee, Western Division, styled *Hill v. Rose*, No. C–72–221, relied upon by the defendants, is not controlling here. In that record the missing witness had given an exculpatory affidavit which would have inured to Hill's benefit. The missing officer's testimony here would not have exculpated the defendant. With the court charging the rule of law as to the inference warranted by the failure of a party to call a witness whose testimony would naturally favor that party, we find no error and overrule this assignment.

■ We have reexamined our posture on denial of bail under T.C.A. 40–1204 where, as here, that act became law after defendants' arrest. It has ex post facto overtones by their being confined as a result thereof. His assignment in this area is sustained.

■ Defendants lastly contend that the trial court erred by charging the jury on the parole statutes, T.C.A. 40–3612; T.C.A.

**912**

40–3613; T.C.A. 41–332; T.C.A. 41–334, and that under *Farris v. State*, Tenn., 535 S.W.2d 608 (1976) this is reversible error. The first time this question appears in the record is on April 5, 1976, in a brief by the defendants styled "Amended and Supplemental Brief and Argument and Assignments of Error". Not having objected to the charge and it not being assigned in the motion for a new trial under *Farris v. State*, supra, it has no merit. This assignment is overruled.

■ We think the two judgments are the result of one search in which the different types of contraband were found at or about the same time with no facts supporting possession of the two at separate intervals; therefore, under *Wells v. State*, Tenn., 517 S.W.2d 755 (1974) and *Wells v. State*, Tenn. Cr.App., 509 S.W.2d 520, 521 (1973) and *Headrick v. State*, Tenn.Cr.App., 519 S.W.2d 403 (1974), there may be only one conviction. On the other hand, in the absence of our Supreme Court overruling the above cited authorities, we may safely assume by the enunciation of *State v. Black*, Tenn., 524 S.W.2d 913 (1975), it has sub silentio undercut the salutary holdings of *Wells, Wells* and *Headrick*, by the following language found therein at page 920:

> "The statutory elements of the two offenses are different, and neither offense is included within the other."

Under that rationale we think the two judgments may stand.

Although we think the logic in *Wells, Wells* and *Headrick,* supra, is more in line with the intent of the legislature, being an intermediate court we must accept the tenets of *Black*, supra. The two judgments are accordingly affirmed.

WALKER, P. J., concurs.

O'BRIEN, Judge dissenting.

I disagree with the view that the decision in *State v. Black*, 524 S.W.2d 913 (Tenn. 1975) has undercut and overruled *Wells v.*

*State*, 509 S.W.2d 520 (Tenn.Cr.App.1973), affirmed 517 S.W.2d 755 (Tenn.1974).

Plainly, the same circumstances and conditions existed in this case as in *Wells,* supra, in which our Supreme Court affirmed, and in so doing said:

> "We reason, as did the Court of Criminal Appeals, that all three indictments and their subsequent convictions were for the possession of a controlled substance. The possession of each was made a felony by Chapter 163 of the Public Acts of 1971. The record nowhere shows that the possession of each substance was acquired by a separate act. The possession, on the contrary, was a single possession and a single act. The jury found both defendants guilty of the possession, and the defendants do not now challenge that finding. There is sufficient material evidence to support the jury's conclusion. But since there was, in each case, a single and not a multiple possession, there should be a single and not a multiple conviction and sentencing. . . ."

I would affirm the conviction for possession of LSD and dismiss the conviction for possession of marijuana.