STATE OF WEST VIRGINIA

*v.*

MICHAEL CHANCELLOR GANGWER

(No. 14922)

Decided January 22, 1982.

*Lantz & Rudolph and George E. Lantz,* for appellant.

*Chauncey H. Browning,* Attorney General *and S. Clark Woodroe,* Assistant Attorney General, for appellee.

McGRAW, JUSTICE:

The appellant, Michael Gangwer, was convicted of first degree murder in the Circuit Court of Wood County. He received a sentence of life imprisonment with a recommendation of mercy. The appellant assigns the following errors: (1) the trials court erred in refusing the appellant's motion for a change in venue; (2) the trial court gave an erroneous instruction limiting the testimony concerning conversations with his brother pertinent to motive prior to the killing; (3) the trial court erred in

allowing, over objection, the State to ask, upon cross-examination, improper hypothetical questions of the appellant's character witnesses; (4) the trial court erroneously instructed the jury on the material elements of first degree murder; (5) the trial court erroneously instructed the jury on self-defense; and (6) the evidence adduced at trial was manifestly inadequate to support a verdict of first degree murder.

The appellant and his brother, Richard Gangwer, were indicted for the murder of Jimmie L. VanCamp. Jr. The evidence at trial indicated that the appellant's brother and a friend had gone to the victim's home several hours before the shooting to buy marijuana from VanCamp. Richard Gangwer gave VanCamp $40.00 for the marijuana, money which he apparently borrowed from the appellant. Before Richard received his purchase, he and VanCamp argued over a missing .22 caliber pistol which belong to VanCamp. A struggle ensued, during which the gun fell out of Richard's jacket. VanCamp's wife testified that after discovering the gun her husband told Richard to get out. At this point, Richard asked for his money back and the victim refused, whereupon Richard left the house.

Richard later returned home where he lived with his parents and brother and sister-in-law. The facts surrounding the following events are in controversy.

According to the appellant, he and his brother returned later that evening to the VanCamp residence. The appellant parked the car approximately thirty yards away, took his loaded .357 Magnum handgun out of the car, and went to the front door. He testified that he took the gun with him only as a precautionary measure and that he instructed Richard to remain in the car. VanCamp's wife opened the door and at the same moment Richard approached with an automatic rifle. VanCamp's wife was forced outside the door into the appellant's arms. Richard was at first caught between the door and frame, but was eventually pulled inside the house. At this point a standoff of approximately ten to fifteen minutes duration occurred between the appellant on the porch holding the

victim's wife, and the victim who, with the help of two friends, held the appellant's brother inside the house.

At one point during the standoff the victim, who was armed with a .22 caliber pistol, allegedly grabbed Richard by the head in the doorway and threatened to kill him. The appellant testified that Richard said, "Help me, Mike. Help me," and that he could see the victim's finger cocking the gun at his brother's head. At this point, the appellant fired his weapon twice. He testified that he only intended to wound the victim by shooting his firing arm and that it was Linda VanCamp's movement that threw his aim off.

The testimony of Linda VanCamp was that the appellant grabbed her and threatened her with a gun, demanding his money back, and that her husband was shot when Richard called to the appellant from the house to "Waste him, Mike, waste him." VanCamp died of his wounds.

## I.

In support of his motion for change of venue the appellant submitted numerous newspaper articles regarding the homicide and the trial of his brother who was convicted of aiding and abetting in the killing.[1] The appellant also submitted 75 affidavits of members of the community who were of the opinion that he could not get a fair trial in Wood County.

In *State v. Pratt*, 161 W.Va. 384, 244 S.E.2d 227 (1978), this Court held that widespread publicity, of itself, does not require change of venue, and neither does proof that prejudice exists against an accused, unless it appears that the prejudice against him is so great that he cannot get a fair trial. In other words the defendant must show that he cannot get a fair trial because of the existence of extensive present hostile sentiment. In *State v. Boyd*,___ W.Va. ___, 280 S.E.2d 669 (1981), we discussed the requirements announced in *Pratt* and explained that the

---

[1] This conviction was recently reversed on the basis of a faulty self-defense instruction. *State v. Gangwer*,___ W.Va. ___, 283 S.E.2d 839 (1981).

inquiry as to whether a defendant has established good cause for change of venue is not focused on the amount of pre-trial publicity, but on whether the publicity has so pervaded the populace of the county as to preclude a fair trial.

Whether a change of venue is warranted rests in the sound discretion of the trial court, and its ruling thereon will not be disturbed, unless it clearly appears that such discretion has been abused. *State v. Sette,* 161 W.Va. 384, 242, ____ S.E.2d 464 (1978); *State v. Wooddridge,* 129 W.Va. 448, 40 S.E.2d 899 (1946). In this case the appellant's evidence failed to show the existence of an extensive present hostile sentiment throughout the population of the county, and the trial court did not abuse its discretion in denying the motion for change of venue.

II.

In order to establish his state of mind and his motive for carrying a loaded weapon on the night of the homicide, the appellant testified as to what his brother told him about the character of the victim and the number and type of weapons the victim had at his house.

After this testimony the judge instructed the jury:

> Ladies and gentlemen, you may consider the testimony of the witness as to what Richard Gangwer said to him about the home and car, on the way there, insofar and insofar only as you may believe the same to be evidence that such things were told to this witness but you shall not consider as any evidence of the truth of any of the things related by Richard Gangwer. In other words, it's not evidence of fact.

The appellant argues that this instruction, and particularly the last sentence, was improper and misleading to the jury, and requires reversal of his conviction.

The evidence the appellant presented is clearly admissible as original evidence. The majority of this Court has held that "[W]here it becomes relevant to show that a certain statement was made, regardless of the truth or

falsity of the statement or declaration itself, such proof is not hearsay and should be admitted." Syllabus Point 2, in part, *State v. Greenlief*, 163 W.Va. 168, ____ S.E.2d (No 14668, Dec. 17, 1981); *see also Keller v. Sonn*, 140 W.Va. 860, 87 S.E.2d 453 (1955); *State v. Corbin*, 117 W.Va. 241, 186 S.E. 179 (1936); F. Cleckley, *Handbook on Evidence* § 46 B (1978). Thus the evidence the appellant presented is not hearsay because it was not offered to prove the truth of the matters asserted, but only to show that such statements were made and affected the appellant's state of mind.

The trial court's instruction obviously attempted to instruct the jury that the particular testimony was not offered to prove the truth of the statements made by the appellant's brother. The instruction, although inartfully worded, adequately conveys this idea to the jury. Moreover, the appellant failed to object to the giving of the instruction at trial, and consequently has waived his right to assign the matter as error on appeal. "The general rule is that a party may not assign as error the giving of an instruction unless he objects, stating distinctly the matter to which he objects and the grounds of his objection." *State v. Bush*, 163 W.Va. 168, ____, 255 S.E.2d 539, 547 (1979). Furthermore the "plain error" rule, which gives discretion to the trial court or this Court to notice plain error in the giving of an instruction, *see e.g., State v. Dozier*, ____ W.Va. ____, 255 S.E.2d 552 (1979), is inapplicable where, as here, the instruction given, though inartfully worded, is substantially correct. *Cf. State v. Demastus*, ____ W.Va. ____, 270 S.E.2d 649 (1980).

### III.

The appellant called eleven character witnesses in his defense. Each witness was asked on direct examination if the appellant had a general reputation in the community for truth and veracity, and for being a law abiding citizen. Each witness was also asked if they would believe the appellant under oath.

On cross-examination the prosecution asked the following question to each of the appellant's character witnesses, over the objection of the appellant:

> [I]f you were to believe that [the appellant] held a female person against her will, for a period of approximately ten minutes while he was holding a fully loaded .357 Magnum revolver at his side and pointed at another person, would your opinion as to his being a law abiding citizen be the same?

Two of the eleven witnesses answered this question in the negative. The appellant contends that this question was improper, and constitutes grounds for reversal.

The record reveals errors on the part of both the prosecution and the defense in the questioning of the appellant's character witnesses. In West Virginia a criminal defendant may only use reputation evidence to prove character. Therefore the reputation witness may not be cross-examined as to his personal opinion regarding the accused's character. *See e.g., State v. Nuckolls*, 52 W.Va. 736, 166 S.E.2d 3 (1968); *State v.Dephenbaugh*, 106 W.Va. 289, 294, 145 S.E. 634, 636 (1928); *Horton v. Tyree*, 104 W.Va. 238, 139 S.E. 737 (1927); F. Cleckley, *Handbook on Evidence* § 30 (D)(3)(b) (1978).

Defense Counsel's questions about the appellant's reputation for truth and veracity, and for being a law-abiding citizen were proper under the West Virginia rule. However, defense counsel's last question, asked to each character witness, *i.e.* "would you believe Michael Gangwer under oath?" clearly calls for a personal opinion and is improper.

Likewise, the prosecution's hypothetical question also calls for the witnesses' personal opinion and is improper. The issue here is whether defense counsel, in asking each witness their personal opinion regarding the appellant's believability under oath, opened the door for the prosecution to inquire, on cross-examination, of the witnesses's personal opinion regarding the appellant's stature as a law-abiding citizen.

As a general rule, the scope of cross-examination is coextensive with, and limited by, the material evidence given on direct examination. *See generally, State v. Koch,* 75 W.Va. 648, 84 S.E. 510 (1915); *State v. Carr,* 65 W.Va. 81, 63 S.E. 766 (1909); *State v. Hatfield,* 48 W.Va. 561, 37 S.E. 626 (1900). Since in this case the appellant asked each of his character witnesses their personal opinion regarding his character, the trial court properly permitted the prosecution to cross-examine the witnesses with regard to that opinion.

The question propounded by the prosecution went to the witnesses' opinions of the appellant as a law-abiding citizen. The question asked on direct pertained to the witnesses's opinions regarding the appellant's believability under oath. We believe this is too fine a distinction upon which to predicate a claim of reversible error. Both inquiries focused on the witnesses's opinions of appellant's character. Moreover, this error is mitigated by the fact that only two of the appellant's eleven character witnesses indicated that their opinion of the appellant would change in response to the prosecution's question.

The appellant also objects to the form of the hypothetical question asked of the character witnesses on cross-examination, in that it referred to specific acts of the appellant. In Syllabus Point 3 of *State v. Nuckolls, supra,* this Court held:

> The rule is well established that the credibility of a character witness can be tested by referring to certain things he should have heard that would indicate that the conclusion that the reputation was good was incorrect or not sustained.

While this rule is framed in terms of a witnesses' credibility regarding a defendant's good reputation, we believe its principles are equally applicable when the defendant places his character in issue by way of opinion evidence.

In this case the specific acts referred to in the prosecution's hypothetical question were limited by the trial

court to the evidence presented in the appellant's own testimony. These specific acts, admitted by the appellant, would clearly be relevant to a witnesses's opinion of the appellant's character, just as specific acts of the defendant which the witness should have heard may be relevant to the witnesses' conclusion regarding the defendant's reputation. We therefore conclude that there was no error on this point below.

## IV

One of the theories advanced by the appellant at trial was that he shot the victim in the heat of passion upon provocation of the victim. The appellant offered three instructions discussing the absence of provocation as a material element of murder for submission to the jury. For example appellant's instruction number 30 provides, in pertinent part:

> A homocide committed in the heat of passion under sudden provocation can be no greater degree of crime than voluntary manslaughter. The absence of the heat of passion upon sudden provocation is a material element of murder in the first degree and murder in the second degree and, like all material elements of such offenses, must be proven beyond all reasonable doubt.

All of the appellant's instructions discussing provocation were refused by the trial court.

The appellant contends that the refusal of these instructions, in conjunction with the giving of State's instruction number one, which outlines in detail the elements of the various degrees of murder, but makes no mention of a killing done in the heat of passion upon sudden provocation, unconstitutionally shifted the burden of proving the absence of provocation to the appellant, in violation of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *State v. Pendry*,___ W.Va. ___, 227 S.E.2d 210 (1976).

In *Mullaney v. Wilbur, supra,* the United States Supreme Court found violative of due process a Maine homicide statute which required the defendant to estab-

lish by a preponderance of the evidence that he acted in the heat of passion on sudden provocation in order to reduce murder to manslaughter. The trial court in *Mullaney* had instructed the jury that if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation. The Supreme Court found this instruction defective under its ruling in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), requiring the prosecution in a criminal case to prove beyond a reasonable doubt every fact necessary to constitute the crime charged.

In *State v. Pendry,*____ W.Va. ____, 227 S.E.2d 210 (1976), this Court discussed the impact of *Mullaney* on West Virginia law, and found that *Mullaney* results in no change in our criminal law, since "[i]n West Virginia it has always been accepted that the State bears the ultimate burden of proving beyond a reasonable doubt every material fact necessary to the conviction of the defendant of the crime with which he is charged." 227 S.E.2d at 220. In *Pendry* this Court held that it was constitutionally impermissible for the State to give an instruction that advised the jury that they could presume malice from the use of a deadly weapon and thereby require the defendant to prove that he acted upon provocation.

This Court discussed the *Pendry* decision in the context of an instruction on provocation in *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978). In *Starkey* we found no error in the giving of the following instruction:

> The Court instructs the jury that malice and intent can be inferred by the jury from the defendant's use of a deadly weapon, under circumstances which you do not believe afforded the defendant excuse, justification or provocation for his conduct.
>
> 244 S.E.2d at 226.

Discussing this instruction, we stated:

> This [instruction] avoids the fundamental error found in *Mullaney*, which was the instructional law given to the Maine jury that once the homicide was established as unlawful and intentional, malice aforethought was conclusively implied *unless* the defendant proved he acted on sudden provocation. Here the inference does not arise *until* the jury finds that there was no "excuse, justification or provocation."

> Moreover, the instruction is not made binding and contains no language which indicates the defendant has any burden of proof to negate an essential element of the crime. We, therefore, conclude there was no error in giving the instruction.
>
> *Id.*

Of particular importance to the issue raised by the appellant is the decision of this Court in *State v. Kirtley* 162 W.Va. 249, 252 S.E.2d 374 (1979). In *Kirtley* we recognized that unlike the Maine statute of *Mullaney v. Wilbur, supra,* which made the presence of heat of passion upon sudden provocation the crucial element distinguishing murder from manslaughter, it is the element of malice which forms the critical distinction between murder and voluntary manslaughter in West Virginia. We further recognized in *Kirtley* that passion and malice are inconsistent concepts.

Consequently, an instruction which requires the State to prove beyond a reasonable doubt the existence of malice on the part of the defendant at the time of the homicide, cannot be said to unconstitutionally shift the burden of proof on the issue of provocation to the defendant. Thus the giving of State's instruction number one, which correctly placed the burden of proving malice beyond a reasonable doubt on the State, cannot be said to be erroneous.[2]

---

[2] State's Instruction Number 1 provides, in pertinent part:
Murder in the first degree is committed when any person kills another person unlawfully, maliciously, deliberately and pre-

Moreover the evidence adduced at trial does not support the appellant's theory of provocation. The West Virginia rule regarding provocation is stated in the tenth and eleventh syllabus points of *State v. Clifford,* 59 W.Va. 1, 53 S.E. 981 (1906):

> 10. A sudden intentional killing with a deadly weapon, by one who is not in any way at fault, in immediate resentment of a gross provocation, is *prima facie* a killing in heat of blood, and, therefore, an offense of no higher degree than voluntary mansalughter.

---

meditatedly, or murder in the first degree is committed when any person kills another person by lying in wait.
* * *
The burden is on the State to prove the guilt of the Defendant beyond a reasonable doubt, and the Defendant, MICHAEL CHANCELLOR GANGWER, is not required to prove himself innocent. He is presumed by the law to be innocent of these charges and this presumption remains with him throughout the entire trial.

Before MICHAEL CHANCELLOR GANGWER can be convicted of murder in the first degree, the State of West Virginia must overcome the presumption that he is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that:

1. The Defendant, MICHAEL CHANCELLOR GANGWER,
2. in Wood County, West Virginia.
3. on or about the 14th day of March, 1978,
4. did unlawfully, maliciously, deliberately and premeditatedly,
5. Kill
6. JIMMIE LEE VANCAMP, JR.

If after impartially considering, weighing and comparing all the evidence, both that of the State and that of the Defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of murder in the first degree, you may find MICHAEL CHANCELLOR GANGWER guilty of murder in the first degree as charged in the indictment.

If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of murder in the first degree, you shall find MICHAEL CHANCELLOR GANGWER not guilty of murder in the first degree.

11. When in such case the evidence discloses that no time intervened between the giving of the provocation and the act of killing, within which passion could have subsided and reason regained its dominion and the fatal act itself was not attended by circumstances of extreme cruelty and inhumanity, nor preceded by conduct from which malice can be inferred, a conviction of murder in the second degree should be set aside and a new trial allowed.

The appellant's own testimony that his brother rushed the victim's house with an automatic weapon and that he, the appellant, held the victim's wife at gunpoint for over ten minutes belies the theory that the victim's alleged assault on the appellant's brother was unprovoked and that the appellant was without fault. Consequently it was not error for the trial court to refuse the defendant's instructions on provocation.

V

Another theory offered by the appellant at trial was that the killing was legally justified on the basis of self-defense or defense of his brother. Appellant's instruction number 31 provides, in pertinent part:

If Michael Gangwer was not the aggressor, and had reasonable grounds to believe and actually did believe that he, or his brother, was in imminent danger of death or serious bodily harm from which he could save himself, or his brother, only by using deadly force against Jimmie Lee Van-Camp, Jr., he had the right to employ deadly force in order to defend himself and his brother.

This instruction was given to the jury, along with State's instruction number 13 which defines an "aggressor" as "one who brings on a conflict or affray by some overt act or demonstration calculated to precipitate a difficulty or conflict."

The appellant contends the definition of aggressor given by the trial court failed to fully, clearly and properly define aggressor and to relate the definition to

the evidence, and thus was confusing and misleading to the jury.

As a general rule, an instruction embodying an abstract proposition of law without in any way connecting it with the evidence, or indicating which facts the jury must find from the evidence in order to make it applicable to the case, ought not be given. *Morrison v. Roush,* 110 W.Va. 398, 158 S.E. 514 (1913); *Parker v. National Mutual Building, etc.,* 55 W.Va. 134, 46 S.E. 811 (1904). However, it is not reversible error for a trial court to give an abstract instruction where the instruction is not misleading or inapplicable to the case. *Humphrey v. Virginia Ry. Co.,* 132 W.Va. 250, 54 S.E.2d 204 (1948).

The giving of an instruction stating an abstract principle of law in a criminal case is not error, unless the principle stated is erroneous so as to mislead the jury. *State v. Porter,* 98 W.Va. 390, 127 S.E. 386 (1925). In the case at hand, the instruction given by the trial court defining "aggressor" is unduly abstract and fails to connect the definition with the evidence presented, and therefore should not have been given. However, the definition of "aggressor" contained therein is essentially correct, *see State v. Bowyer,* 143 W.Va. 302, 101 S.E.2d 243 (1957); *Perkins v. Commonwealth,* 186 Va. 867, 44 S.E.2d 426 (1947), and therefore under the rule in *State v. Porter, supra,* the giving of this instruction by the trial court was not reversible error.

## VI

Finally, the appellant contends that the evidence is manifestly inadequate to support a verdict of first degree murder. We find this contention to be wholly without merit. As we held in Syllabus Point 1 of *State v. Starkey, supra,* and reiterated in Syllabus Point 1 of *State v. Andriotto,*___ W.Va. ___, 280 S.E.2d 131 (1981):

> In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the State's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evi-

dence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Upon review of the record it is manifestly clear that the State's evidence was sufficient to sustain a verdict of first degree murder under the standard announced in *Starkey*, *supra*. The evidence introduced by the State showed that the appellant went to the dwelling of the victim with a loaded .357 Magnum revolver, held the victim's wife captive while he argued with the victim about the return of his money and the release of his brother, and deliberately shot the victim when his brother called out from the house to "Waste him, Mike, waste him." This evidence is clearly sufficient to convince impartial minds of the guilt of the appellant beyond a reasonable doubt of first degree murder.

For the foregoing reasons the decision of the Circuit Court of Wood County is affirmed.

*Affirmed.*