# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**James Jones,**
**Petitioner Below, Petitioner**

**vs.)  No. 17-0093** (Jefferson County 12-C-315)

**Ralph Terry, Acting Warden,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**April 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James Jones, by counsel Matthew D. Brummond, appeals the Circuit Court of Jefferson County's December 29, 2016, order denying his amended petition for writ of habeas corpus. Respondent Ralph Terry, Acting Warden of Mt. Olive Correctional Complex, by counsel Robert L. Hogan, filed a response.[1] On appeal, petitioner argues that the circuit court erred in denying his amended petition for writ of habeas corpus without affording him an evidentiary hearing on his ineffective assistance of counsel claim.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2006, petitioner entered a bar in Jefferson County and began shooting into the crowd. Three people were shot in the process, one of whom died from his injuries. In April of 2007, petitioner was indicted on the following counts: (1) one count of first-degree murder, (2) two counts of attempted first-degree murder, (3) two counts of malicious assault, (4) six counts of wanton endangerment involving a firearm, (5) three counts of shooting at another person in a place of public resort, and (6) one count of prohibited person in possession of a firearm.

The trial court held a status hearing in May of 2007, during which petitioner advised the

---

[1]Since the filing of the petition in this case, the warden at Mt. Olive Correctional Complex has changed, and the acting warden is now Ralph Terry. The Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

trial court that he was not currently competent to stand trial. Petitioner underwent an evaluation by a mental health expert, who issued a report in July of 2007, opining that petitioner was not then competent to stand trial. Two additional experts were consulted and each concluded that petitioner was competent to stand trial. In September of 2007, petitioner's mental health expert testified during a competency hearing that petitioner was not competent to stand trial. The trial court held a second status hearing in November of 2007, during which petitioner advised the trial court that he was "withdrawing his request for [a] further competency hearing in this matter." Petitioner told the trial court that he had made significant improvement in his mental health treatment, was taking the maximum amount of Trilafon[2], and no longer believed that his competency was at issue. Petitioner's counsel concurred with the assessment. However, later in November of 2007, petitioner notified the court of his intention to use a diminished capacity defense.

In January of 2008, petitioner entered into a binding *Alford*[3] plea agreement. Per the agreement, petitioner pled guilty to (1) one count of first-degree murder, (2) two counts of malicious assault, and (3) six counts of wanton endangerment, in exchange for the State's recommendation of mercy and the dismissal of the remaining counts in the indictment. The trial court sentenced petitioner to an effective sentence of life in prison, with mercy, plus twenty years. Petitioner did not file a petition for direct appeal.

In August of 2012, petitioner filed a pro se petition for writ of habeas corpus. Petitioner was appointed counsel, and in May of 2016, he filed an amended petition raising several grounds, including ineffective assistance of counsel. Specifically, petitioner asserted that his trial counsel was ineffective for failing to properly litigate petitioner's competency, failing to request a continuance to permit petitioner additional time to consider the plea terms or permitting him to enter into the plea while mentally incompetent, and failing to properly investigate the case and make appropriate pretrial motions. Without conducting an evidentiary hearing, the circuit court denied petitioner's amended petition by order entered on December 29, 2016. It is from this order that petitioner appeals.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

---

[2]Trilafon is marketed as an anti-psychotic medication.

[3]*North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

On appeal, petitioner contends that the circuit court erred in not holding an evidentiary hearing on his ineffective assistance of counsel claim. Specifically, petitioner argues that the circuit court abused its discretion in relying upon the first prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to summarily dismiss his petition for writ of habeas corpus without holding an evidentiary hearing. We disagree.

To begin, petitioner acknowledges, evidentiary hearings are not proper in every case:

> [a] court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing and without appointing counsel for the petitioner if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief.

Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973). The decision to hold a hearing rests in the "sound discretion" of the circuit court. *Tex S. v. Pszczolkowski*, 236 W.Va. 245, 253, 778 S.E.2d 694, 702 (2015) (citation omitted). Although petitioner urges this Court to conclude that he was entitled to a hearing as we found in *State ex rel. Watson v. Hill*, 200 W.Va. 201, 488 S.E.2d 476 (1997) and *State ex rel. Nazelrod v. Hun*, 199 W.Va. 582, 486 S.E.2d 322 (1997), our decisions in those cases were predicated on the finding that "[a]n examination of the ineffective assistance of counsel claim requires an examination of facts not developed in the appellant's trial transcript." *Id.* at 584, 486 S.E.2d at 324. "Without any findings whatsoever, this Court can exercise no meaningful review, and is compelled to order a hearing." *Watson*, 200 W.Va. at 205, 488 S.E.2d at 479-80. Petitioner's underlying record, however, was sufficiently developed to allow the circuit court to conclude that he was unable to establish that counsel's representation was deficient.[4]

Petitioner's first allegation regarding his trial counsel's ineffectiveness is that counsel failed to properly litigate petitioner's mental capacity issue. However, evidence of trial counsel's effort to investigate petitioner's history of mental illness was sufficiently established at many stages during the proceedings below. Only one month after petitioner was indicted, his trial

---

[4]Claims of ineffective assistance of counsel

> are to be governed by the two-pronged test established in *Strickland v. Washington* . . . (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) (internal citation omitted). A claim may be disposed of for failure to meet either prong of the test. Syl. Pt. 5, in part, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995). "Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden, W.Va. Penitentiary*, 207 W.Va. 11, 17, 528 S.E.2d 207, 213 (1999) (citation omitted).

counsel notified the State of his intention to assert a mental competency defense. Petitioner underwent an evaluation by his own mental health expert, who opined that petitioner was not competent to stand trial. Petitioner then underwent two more mental health evaluations and those experts opined that petitioner was, in fact, competent to stand trial. As such, a competency hearing was scheduled and petitioner's own expert testified as to why he believed petitioner was not competent to stand trial. In reviewing the record of trial counsel's questioning of the expert, the habeas court found that "[t]he questions posed by trial counsel were entirely appropriate to allow his expert witness to explain his opinions regarding the [p]etitioner's competency and inability to assist in his own defense, despite understanding the proceedings. In this regard, counsel's performance was not deficient under an objective standard of reasonableness . . . ."

Further, the record indicates that petitioner himself chose to withdraw his competency defense. The trial court's order from the November of 2007 status hearing sets forth that

> [t]he [d]efendant informed this [c]ourt that he was withdrawing his request for further competency hearing in this matter. The [d]efendant made known to the [c]ourt the significant and marked improvement of his mental state due to the medical treatment he is receiving at the Eastern Regional Jail. His medication levels have been increased several times, each time yielding a benefit to the [d]efendant. He is currently taking the maximum amount of trilophan [sic] and no longer believes that his competency is an issue. His counsel concurred with this assessment.

After withdrawing his request for further competency assessment, petitioner's trial counsel filed a notice of intent to use a diminished capacity defense, which again raised the issue of petitioner's mental health. The habeas court, in its order denying petitioner's petition, found

> that trial counsel promptly asserted a mental health defense, engaged the expert in services of a respected expert witness, secured the testimony of that witness, and substantially litigated the matter over a period of months. In the intervening time [p]etitioner was treated for his mental health issues while incarcerated in the regional jail, resulting in the [p]etitioner himself asserting that his competence was no longer at issue, a position which counsel agreed with at hearing [sic] on November 2, 2007. These facts do not suggest that counsel was in any way ineffective.

Accordingly, the habeas court found that there were sufficient facts in the record to determine that petitioner's trial counsel did not fail to litigate his mental health issue. In fact, the record demonstrates that petitioner's trial counsel continuously pursued a mental competency defense until petitioner himself withdrew it, and even then, trial counsel raised the issue again. Therefore, we find no error in the habeas court's conclusion that a hearing was unnecessary to develop this claim.

In his petition, petitioner also alleged that his counsel was ineffective for failing to request a continuance during the plea hearing so that he could have more time to consider the plea. Additionally, petitioner alleged that his trial counsel was ineffective when he allowed him

4

to enter a guilty plea while he was incompetent. Again, we find that sufficient evidence in the record below established that petitioner was not entitled to relief in this regard. The prosecutor read the plea agreement aloud on the record. Petitioner agreed to the agreement as it had been read, voluntarily entered into his plea agreement, did not assert that he was not competent to do so, and did not assert that he needed additional time to think about the plea agreement.

Petitioner offered the following testimony concerning his understanding of the plea agreement:

Q: All right, sir. I guess the first person I will ask would be, Mr. Jones, I just saw [your trial counsel] execute the written form of [the plea agreement] as the prosecutor was just reading from. I know that you were here in court listening to what [the prosecutor] read, is that the correct agreement you have?

A: Yes, I do believe it is.

Q: Okay. If we go forward on this, I am going to ask a whole lot more questions about your understanding, but you understood that is what you are entered into?

A: Yes.

Later in the plea colloquy, the trial court again addressed whether petitioner understood the terms of the plea agreement and the potential consequences.

Q: Are you aware [the prosecutor] just went through out loud the penalties for each of the offenses?

A: Yes, I am.

Q: Is that the way you understood them the way they were articulated on the record?

A: Yes, sir.

Q: You understand those are the ultimate penitentiary sentences?

A: Yes, sir.

Q: You understand that the plea to the murder in the first degree charge would be with mercy so you would be eligible for parole but not until at least 15 years?

A: Yes, sir.

Q:      Do you understand that?

A:      Yes, sir.

Q:      Then there is the issue of the other consecutive sentences; do you
        understand all of that?

A:      Yes, sir.

At that time, petitioner's trial counsel stated

"[l]et me interject. I just want to for [sic] the record in discussing this plea with
the victims and coming up with it, I just want to be clear to the [d]efendant, he
understands that they do have a right to come in 15 years when he is eligible for
parole, I just want to make sure for the record there is no agreement that they will
not come to the parole hearings just for the record?"

To which the trial court responded:

Q:      You understood that?

A:      I understand that.

Moreover, the plea hearing transcript demonstrates that petitioner was given multiple
opportunities to decline to enter into the plea agreement and proceed to trial instead. After going
through the counts to which petitioner pled guilty, the trial court continued its questioning into
petitioner's readiness and voluntary agreement.

Q:      You're leading the [c]ourt to believe that you know what you are
        doing, that you understand what you have been charged with, and
        the consequences of your plea, and that your desire is to go ahead
        and plead guilty, freely and voluntarily, is that right, Mr. Jones?

A:      Yes, sir.

After finding that petitioner understood the nature of the offenses, the consequences of the plea,
and his voluntariness in entering into the plea, the trial court stated

Now, sir, if you desire to stand upon your plea of guilty, you will now sign
the written guilty plea form. Before you sign it, read it and go over it with your
lawyer and make sure you understand it all. I advise you if you sign that form,
you are pleading guilty to these offenses we have been talking about.

Mr. Jones, let me make one point I usually make before this. I often refer
to this as the dotted line or point of no return, because up until this point all of the

questions that I am asking you are to make sure that you know what your rights are and give you the chance to go the other way.

By signing on the written plea, you are telling us that you want to go this way. After today you couldn't come in and change your mind and say, hey, you know, I wanted to do it a different way. You are stuck with it. Basically, the only way that you could get out of it, after signing on the dotted line, would be if we were to get a pre-sentence report that somehow convinces the [c]ourt that the plea wasn't a good plea, that it didn't serve the ends of justice, but otherwise you wouldn't be able to withdraw it yourself; do you understand that?

To which, petitioner responded "[y]es." The trial court then stated, "I want you to look at it pretty hard and make sure this is what you want to do." Petitioner then signed the plea agreement in open court. Despite having questioned petitioner several times regarding the voluntariness of his plea and whether he desired to proceed in that matter, the trial court once again provided petitioner the opportunity to change his mind. It stated:

Now, Mr. Jones, I always ask this question one last time. Even though I made a big deal about saying this was the point of no return, I always make one last offer every time I take a plea.

We like to think that any time a person wants a trial, that we can extend a full and fair and proper trial and that a person can have available to them all the constitutional rights that are available in this country. We do our level best to make sure of that.

I assure you that if what you really want is a trial, we would do our level best to make sure you got a fair one.

And if you got convicted as a result of that trial, you would have the right to appeal your conviction down to the West Virginia Supreme Court of Appeals and make sure they thought you got a full, fair and proper trial.

Those are valuable rights. Are you sure you want to give up those rights and stand on this plea, which if you do, will result in your immediate conviction for the offenses that we have been discussing here this morning? Do you wish to stand upon your plea?

To which petitioner again answered in the affirmative.

In its order dismissing petitioner's habeas petition, the habeas court, after reviewing the record, found that

[a]t no point in the 40-page plea hearing transcript does the [p]etitioner suggest that he is unhappy with his counsel or that he wished to have a continuance.

7

Instead, the [p]etitioner clearly stated the opposite, that [his trial counsel] had acted as a good lawyer on his behalf:

THE COURT: Okay. Mr. Jones, you are represented by [your trial counsel]. He is here with you today. Have you fully discussed your case with him and explained to [your trial counsel] everything that you know about your case to put him in a good position as you can to represent you?

THE DEFENDANT: Yes, sir.

THE COURT: Has [your trial counsel] done what you hope and expect a lawyer would do, has he sat down, pulled up a chair, and talked about your case and talked about your defense?

THE DEFENDANT: Yes, he has.

THE COURT: Has he been a good lawyer?

THE DEFENDANT: Yes, he has.

After quoting the plea colloquy, the habeas court found that "[p]etitioner's self-serving claims, made eight years after his plea entry, that on the day of the plea entry he wanted to have additional time to consider the plea is not supported by the record."

We agree with the habeas court's finding that the record during the proceedings below was sufficient to establish that the trial counsel's performance was not ineffective regarding petitioner's competence, readiness, and voluntariness in entering into the plea agreement. In *Call v. McKenzie*, 159 W.Va. 191, 220 S.E.2d 665 (1975), we observed that "[t]he most common issues in [h]abeas corpus cases are whether there were, indeed, knowing and intelligent waivers, whether there were facts outside the record which improperly caused the defendant to enter his plea, and whether defendant's counsel was indeed competent." *Id.* at 196, 220 S.E.2d at 669-70. We found that these issues "can all be finally resolved in the careful taking of the original plea" and outlined certain inquiries that should be made prior to the acceptance of a plea. *Id.* at 196, 220 S.E.2d at 670. Where a plea bargain has been entered into, "the trial court should spread the terms of the bargain upon the record and interrogate the defendant concerning whether he understands the rights he is waiving by pleading guilty and whether there is any pressure upon him to plead guilty other than the consideration admitted on the record." *Id.* at 191, 220 S.E.2d at 667, Syl. Pt. 4. Additionally,

[a] trial court should spread upon the record the defendant's education, whether he consulted with friends or relatives about his plea, any history of mental illness or drug use, the extent he consulted with counsel, and all other relevant matters which will demonstrate to an appellate court or a trial court proceeding in [h]abeas corpus that the defendant's plea was knowingly and intelligently made with due regard to the intelligent waiver of known rights.

*Id.* at 192, 220 S.E.2d at 668, Syl. Pt. 5. Based on the evidence outlined above, it is clear that petitioner voluntarily entered into the plea agreement despite the circuit court's having offered him ample opportunity to request more time to think on his actions. Further, petitioner indicated on the record that he was not intoxicated by his medication and understood his rights and the consequences of his actions in accepting a plea agreement. Accordingly, we find no abuse of discretion in the circuit court's conclusion that a hearing was unnecessary on this claim as it was sufficiently developed in the record below.

Finally, petitioner alleged that his trial counsel was ineffective for failing to investigate the case and make certain pretrial motions. Specifically, petitioner argues that his trial counsel was ineffective for failing to request a change of venue due to pretrial publicity. However, in dismissing the habeas petition, the habeas court found that petitioner failed to present any facts that supported his contention that there was

> locally extensive present hostile sentiment against him at the time of his plea entry and trial scheduled for later that same month. Nor does his present assertion that in 2008 the case was the 'talk of the town' meet the burden which would have been necessary to justify a change of venue . . . .

We have previously found that "[w]idespread publicity, of itself, does not require change of venue, and neither does proof that prejudice exists against an accused, unless it appears that the prejudice against [the accused] is so great that he cannot get a fair trial." Syl. Pt. 1, *State v. Gangwer*, 169 W.Va. 177, 286 S.E.2d 389 (1982). Accordingly, petitioner failed to set forth facts sufficient to prove that his trial counsel's actions in declining to request a change of venue were ineffective.

The preceding excerpts from the plea hearing, as well as the excerpts from the habeas court's order describing the record below, support the denial of petitioner's amended petition. These excerpts reveal that petitioner had his mental competency thoroughly evaluated, was adequately apprised of his right to decline to enter into his plea agreement on the day of his plea hearing, understood the effects of his choice to enter into the plea agreement, and that he was not confused, incompetent, or reluctant to enter the plea agreement. Petitioner also testified to his satisfaction with his trial counsel's representation during the plea hearing and never indicated that he was unhappy with his trial counsel's performance. In fact, petitioner did not raise any issue with his trial counsel's performance until four years after the plea hearing had passed. While we agree that it is often difficult to assess a trial counsel's performance on the record, under the limited circumstances of this case we find that the circuit court's denial was warranted because the records were sufficient to show that petitioner was entitled to no relief. Accordingly, we find no error.

For the foregoing reasons, we affirm the circuit court's December 29, 2016, order denying petitioner's amended petition for writ of habeas corpus.

Affirmed.

**ISSUED:** April 9, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker