# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Respondent, Plaintiff Below**

**vs.)  No. 18-0851** (Lewis County 17-F-12)

**L. M. C.,**
**Petitioner, Defendant Below**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner L.M.C.,[1] by counsel Jeremy B. Cooper, appeals her convictions for murder of a child by parent, guardian, custodian, or other person by refusal or failure to provide necessities; death of a child by parent, guardian, custodian, or other person by child abuse; child abuse resulting in serious bodily injury; and concealment of a deceased human body. Respondent State of West Virginia, by counsel Scott Johnson, filed a response in support of petitioner's convictions. Petitioner filed a reply.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons,

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] On August 26, 2019, petitioner filed a motion for leave to file a supplemental brief. Petitioner's counsel argued that after his initial consultation with petitioner, additional circumstances came to his attention that "should appropriately have been raised on direct appeal, but which were omitted" from petitioner's brief.  Respondent filed an objection to petitioner's motion. Respondent argued that petitioner's motion should be denied as the additional issue that petitioner now attempts to raise on appeal was "available to petitioner prior to the filing of her initial brief." We concur with respondent and deny petitioner's motion for leave to file a supplemental brief.

1

a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2011, petitioner lived in Weston, West Virginia, with her three daughters, D.C., K.C., and A.L.; two sons, T.C. and B.C.; and Ralph Lunsford, the children's father.[3] Petitioner was then eight to eight and one-half months pregnant with twins. On the evening of September 23, 2011, petitioner became angry with A.L., would not allow her to eat dinner, and forced her to stand in the corner. That same evening, D.C. observed petitioner take a piece of a broken bed slat and strike A.L. over the head with the slat.[4] Ultimately, K.C. and D.C. approached A.L. and K.C. helped the child to bed. Both K.C. and D.C. reported feeling the back of A.L.'s head after the incident and described it as "squishy." After placing A.L. in bed, K.C. and D.C. advised petitioner that A.L. was "hurt . . . really bad" to which petitioner responded that "she did not care." Thereafter, petitioner made no effort to check on the physical well-being of A.L.

During the early morning hours of September 24, 2011, D.C. woke to check on A.L., and observed that A.L. was breathing. However, the following morning, when D.C. and K.C. were directed by petitioner to check on A.L., the girls found that A.L. was not breathing and was unresponsive. Petitioner then came into A.L.'s room, shook A.L., and tried calling her name. Ultimately, petitioner scooped up A.L.'s body, put the child on the bathroom counter, raised the child's eyelids, called her name, attempted CPR, and ran A.L.'s body under cold water. A.L. remained unresponsive. Petitioner then located a clothes basket and placed A.L.'s body in the basket, along with some clothing to mask the body, and placed the basket into the family van. Petitioner then drove the van, in which K.C., B.C., and D.C. were passengers, to the Vadis, West Virginia, area and directed K.C. and D.C. "to look for a road without any signs." Once the girls noticed such a location, petitioner stopped the van and told D.C. to remain in the vehicle with B.C. Petitioner then took K.C. and the clothes basket containing the body of A.L. into the woods. K.C. testified that, eventually, she and petitioner came to a spot in the woods where petitioner told her to wait. Petitioner then took the clothes basket with A.L.'s body out of K.C.'s sight and returned after what K.C. stated felt "like quite a while" without A.L.'s body. When petitioner and K.C. returned to the van, D.C. observed that petitioner's hands and stomach were dirty.

Petitioner then drove K.C., B.C., and D.C. back to their residence and made them "promise not to tell anyone what happened." However, while on the way back to their residence, petitioner's vehicle ran out of gas. K.C. and D.C. were directed by petitioner, to "ask for gas at some houses that were around." Two women provided gas to petitioner but neither was advised that A.L. was missing or that petitioner was allegedly searching for A.L. Once they had obtained sufficient gas for the van, petitioner and the children returned to their residence where they, at the direction of

---

[3]Ralph Lunsford was the biological father of K.C., D.C., B.C., and was the putative father of the twins with which petitioner was pregnant in September of 2011. While Mr. Lunsford was not the biological father of A.L., the child was given his last name.

[4] K.C. described the board as being from a bunkbed in the home. K.C. stated that striking the children with the board was a common punishment used by petitioner, and that such punishment had been administered to A.L. prior to September 23, 2011.

petitioner, "cleaned the house." After they cleaned the house, petitioner called the police and reported A.L. missing. Before police arrived at petitioner's home, K.C. testified that petitioner came up with a "storyline" that K.C. and D.C. were to follow: A.L. had been sick all week, they had all gone to bed early, and when they awoke, A.L. was gone. Once A.L. was reported missing, extensive efforts began to search for the child and investigate the circumstances of her disappearance.

Sometime after A.L.'s reported disappearance, petitioner's surviving children were placed with other families and petitioner relocated to Florida. In 2016, K.C. and D.C. made disclosures that petitioner struck A.L. with a wooden bed slat in September of 2011, causing A.L.'s death. In October of 2016, K.C. and D.C. agreed to "come forward with the truth about what really happened to A.L." Both K.C. and D.C. testified that they initially lied about what happened the night of the incident because they feared that petitioner might harm them. D.C. advised that she decided to come forward and tell the truth after five years as she felt that "continuing to hide what happened to [A.L.] was interfering with [her] relationship with God." A.L.'s body was never recovered.[5]

Based upon the statements of K.C. and D.C., an arrest warrant was obtained and executed upon petitioner in Florida. Following her extradition and preliminary hearing, petitioner was indicted by the Lewis County Grand Jury on four charges: (1) murder of a child by parent, guardian, custodian, or other person by refusal or failure to provide necessities (in violation of West Virginia Code § 61-8D-2(a)); (2) death of a child by parent, guardian, custodian, or other person by child abuse (in violation of West Virginia Code § 61-8D-2(a); (3) child abuse resulting in injury (in violation of West Virginia Code § 61-8D-3(b)); and (4) concealment of a deceased human body (in violation of West Virginia Code § 61-2-5(a). Following a jury trial, at which petitioner did not testify, she was convicted on all charges.

At trial, West Virginia State Police Sgt. Shannon Loudin testified regarding A.L.'s reported injuries. Sgt. Loudin stated that:

> [w]hen I look at the possibility of whether or not a strike to the head by a board; by an adult to a three (3) year old's head; my opinion is that it's perfectly possible that that caused an internal injury; which vomiting is a symptom of. And it's - - been testified that she was vomiting. There was some orange stuff around her mouth when she was found the next morning. So yes; I would presume that striking on top of the head of a three (3) year old whose skull is not yet fused together; it doesn't take much to cause an internal injury that would not have any external bleeding that would leave any DNA evidence on the scene.

When asked if he had a physician to support his opinions, Sgt. Loudin stated that he did not claim to be a physician but had

> been part of a lot of child fatality investigations and in my experience and sixteen (16) years as a law enforcement officer I've seen a lot of injuries to children and -

---

[5] While A.L.'s body was never recovered, the investigating officer testified, at trial, that "cadaver dogs each independently located an area where decomposition had occurred."

3

- saw what caused those injuries and had a lot of training in what happens to a child's body when - - when they're abused and in those types of cases.

Because of the nature of petitioner's convictions, following trial, a mercy phase hearing was completed. The jury did not recommend mercy for petitioner. Petitioner, then self-represented, filed a number of post-trial motions, including one alleging the insufficiency of the evidence against her, and a violation of her rights related to respondent's failure to disclose an expert witness. The circuit court denied petitioner's post-trial motions and, on July 2, 2018, sentenced petitioner to life imprisonment without mercy.[6] It is from her convictions that petitioner now appeals.

On appeal, petitioner asserts nine assignments of error, which we will address in turn. First, petitioner argues that the circuit court erred in failing to grant her judgment of acquittal based on insufficient evidence to establish that she formed criminal intent to cause the death of her child by withholding medical care, a violation of West Virginia Code § 61-8D-2(a). Petitioner further contends that there was insufficient evidence that respondent established "corpus delecti: that a death occurred at all, and that the death occurred as a result of a criminal act." Generally, petitioner argues that the questionable veracity of the trial testimony of her daughters, K.C., and D.C., provided an insufficient basis for her conviction.

This Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence. *State v. LaRock,* 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). We have explained that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie,* 194 W. Va. 657, 461 S.E.2d 163 (1995).

---

[6] Petitioner was sentenced to life without mercy on her conviction for the offense of murder of a child by parent, guardian, custodian, or other person by refusal or failure to provide necessities. For her conviction on the offense of death of a child by a parent, guardian, custodian, or other person by child abuse, petitioner was sentenced to a determinate period of forty years imprisonment, which sentence was to run consecutively with her other sentences. For her conviction on the offense of child abuse resulting in serious bodily injury, petitioner was sentenced to an indeterminate term of imprisonment from two to ten years, which sentence was to run consecutively with her other sentences. Finally, for her conviction on the offense of concealment of a deceased human body, petitioner was sentenced to an indeterminate term of imprisonment from one to five years, which sentence was to run consecutively with her other sentences.

4

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *Guthrie*.

Petitioner contends that even when viewing the evidence in the light most favorable to respondent, the evidence introduced against her at trial did not show that she formed the intent required to substantiate her conviction under West Virginia Code § 61-8D-2(a). The events described by K.C. and D.C. do not describe "a plot of kill [A.L.] by not taking her to get medical care." Rather, the testimony describes "intentional physical abuse, and a failure to obtain care." We disagree and find that respondent adduced sufficient evidence at trial to sustain petitioner's convictions. Here, petitioner knew that A.L. was badly injured after being struck with the bed slat, as the child was unable to stand upright and had to be helped to her bed. Despite having such knowledge, and being specifically advised by her older children that A.L. was badly injured, petitioner "took no steps to obtain medical care" for A.L., which was sufficient evidence for the jury to have concluded that petitioner intended to cause A.L.'s death by failing to provide necessary medical care.

Petitioner further argues that respondent failed to establish the necessary elements of corpus delecti, as articulated by this Court in syllabus points 4 and 5 of *State v. Surbaugh*, 237 W. Va. 242, 786 S.E.2d 601 (2016), of (1) a death (by direct testimony or by presumptive evidence which can be sufficiently established by showing that the initial wound caused the death indirectly through a chain of natural causes); and (2) the existence of a criminal agency as a cause thereof. Petitioner contends that respondent failed to meet its burden of proof on both elements of corpus delecti, as there is no credible proof of that a death occurred and "no competent proof" as to the causation of death "even if it did occur." Again, we disagree.

Here, the death of A.L. was established by and through the testimony of K.C. and D.C. Both of the sisters testified that on the morning after being struck on the head with a bed slat by petitioner, A.L. was unresponsive and "not breathing." K.C. recounted her mother attempting CPR on A.L. to no avail.

Petitioner argues that the testimony of K.C. and D.C. must be disregarded as such testimony was inherently improbable and incredible. However, as noted by respondent, the testimony of the girls does not "contradict physical laws," which is required to find testimony inherently improbable/incredible. *See State v. Kenneth M.*, No. 12-0233, 2013 WL 2157826, at *2 (W. Va. May 17, 2013) (memorandum decision) (quoting *State v. McPherson*, 179 W. Va. 612, 617, 371 S.E.2d 333, 338 (W. Va. 1988)). As the sisters' testimony was not "inherently incredible"

it was within the province of the jury to determine whether their testimony was credible or not, and the jury chose to credit their testimony. Accordingly, we find no error.

In her second assignment of error, petitioner argues that her double jeopardy rights were violated when she was sentenced separately for death of a child by a parent by child abuse and child abuse resulting in serious bodily injury, a lesser-included offense. *See State v. Zaccagini*, 172 W. Va. 491, 308 S.E.2d 131 (1983). Based on our review of the record, we find no merit in petitioner's argument. As this Court noted in syllabus point 8 of *Zaccagini*, West Virginia follows the federal double jeopardy test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), which provides that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

West Virginia Code § 61-8D-1(1) defines "abuse" as "the infliction upon a minor of physical injury by other than accidental means." West Virginia Code § 61-8B-1(10) defines "serious bodily injury" as "bodily injury which creates a substantial risk of death, which causes serious or prolonged disfigurement, prolonged impairment of health or prolonged loss or impairment of the function of any bodily organ." West Virginia Code § 61-8D-2a(a) requires the parent to cause the death, which is not an element of West Virginia Code § 61-8D-3(b), which requires serious bodily injury. Because each of these statutory sections requires proof of a fact the other does not, we find no double jeopardy violation.

Next, petitioner contends that the circuit court erred in denying her motion for new trial due to alleged *Brady* violations. This Court has found that "[a] claim of a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), presents mixed questions of law and fact. Consequently, the circuit court's factual findings should be reviewed under a clearly erroneous standard, and questions of law are subject to a *de novo* review." Syl. Pt. 7, *State v. Black*, 227 W. Va. 297, 708 S.E.2d 491 (2010).

In *Brady*, the United States Supreme Court found that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Even in situations where a police investigator is aware of exculpatory evidence, but the prosecuting attorney, through no specific fault of his or her own is not aware, the omission to disclose such evidence still constitute a violation of due process.

Here, petitioner argues that Sgt. Loudin did not disclose his consultation/conversation with Dr. Mel Wright of WVU Hospitals (regarding the possible cause of A.L.'s death). Dr. Wright was not called as a trial witness for either party. It was not until after trial that petitioner's trial counsel contacted Dr. Wright, who advised that he had spoken to Sgt. Loudin prior to trial, and advised that in this case while the hypothetical cause of death (strike to the head with a bed slat) was plausible, it would be impossible to testify "to the plausibility of the theory to a reasonable degree of medical certainty." Dr. Wright opined that aspiration of vomit would also be a plausible cause of death. Petitioner argues that respondent's withholding of this information "amounts to the suppression of exculpatory evidence by [respondent], sufficient to require a new trial."

6

We disagree and find no *Brady* violation. In syllabus point 2 of *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007), we recognized three components of a constitutional due process violation under *Brady v. Maryland*: (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

In *United States v. Wilson*, 901 F.2d 378, 380 (4th Cir. 1990), the United States Court of Appeals for the Fourth Circuit held that "the *Brady* rule does not apply if the evidence in question is available to the defendant from other sources." Here, petitioner's counsel "apparently consulted" with physicians. In fact, petitioner's trial counsel noted that "these physicians had the same conclusions as Dr. Wright, that being struck on the head by a bed slat was a probable cause of death." Accordingly, we concur with the circuit court and find no *Brady* violation occurred.

In her fourth assignment of error, petitioner contends that the circuit court erred in denying her motion for a jury pool consultant and motion for a change of venue. A change of venue motion is reviewed only for abuse of discretion. Syl. Pt. 2, *State v. Gangwer*, 169 W. Va. 177, 286 S.E.2d 389 (1982). Petitioner contends that because of the nature of this crime, and with the well-known, highly publicized media coverage centered on the case and the extensive volunteer recovery efforts to locate A.L., it was impossible to empanel an unbiased jury in Lewis County, West Virginia. We disagree.

The court's decision that the voir dire process could be used to impanel a fair and impartial jury, as opposed to the $10,000 jury pool expert requested by petitioner, was not erroneous. Here, the circuit court engaged in a "lengthy, methodical, searching, and exhaustive voir dire lasting two days and covering roughly four hundred eighty-seven pages in the record." Accordingly, we find that the circuit court did not abuse its discretion in denying petitioner's motion for a jury pool consultant and change of venue.

In her fifth assignment of error, petitioner argues that the circuit court erred in denying her objection to the burden-shifting arguments made by respondent. Specifically, petitioner argues that respondent "wrongfully invited" the jury to ignore the burden of proof by making "unlawful, burden-shifting arguments" in its opening and closing statements. In both arguments, the prosecutor stated "[t]he fact that a murderer may successfully dispose of a victim does not entitle him to an acquittal." *See People v. Manson*, 139 Cal Rptr. 275, 298 (1977).

Based on our review of the record, we find no merit in petitioner's argument. The decision of a circuit court to grant or deny a mistrial is reviewed for abuse of discretion only. *See State v. Thornton*, 228 W. Va. 449, 462, 720 S.E.2d 572, 585 (2011). Here, there was no abuse of discretion. In syllabus point 6 of *State v. Sugg*, 193 W. Va. 388, 456 S.E.2d 469 (1995), this Court set forth four factors to take into account in determining whether improper prosecutorial comments are so damaging as to require reversal:

> (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to

establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

In the instant case, the respondent prosecutor's comments during his opening and closing remarks did not prejudice petitioner. The offending statements made by the prosecutor did not impose any burden on petitioner, as it did not suggest that petitioner had an obligation to produce evidence or prove innocence. Rather, respondent simply noted that it is an "indisputable legal proposition that the failure of the State to produce a body is not a bar to a murder conviction." Further, at trial, the jury was instructed that the State had the burden to "prove the guilt of the defendant beyond a reasonable doubt. The defendant was not required to prove her innocence." The jury was also instructed that the burden was always on the prosecution to prove guilt beyond a reasonable doubt. Accordingly, we find no abuse of the circuit court's discretion in failing to declare a mistrial as a result of the prosecutor's statements.

Next, petitioner contends that the circuit court erred in permitting Sgt. Loudin to testify as to a previously undisclosed statement of petitioner at trial. It is undisputed that during his testimony at trial, Sgt. Loudin recalled that petitioner was surprised by his appearance, along with other officers, at her home in Florida. Upon seeing Sgt. Loudin at her Florida home, petitioner stated: "Oh my [G]od, did you find [A.L.]? Am I in trouble?" Petitioner argues that Sgt. Loudin's trial testimony was the first disclosure of this "supposed statement" of petitioner and, thus, represented "an egregious violation of petitioner's rights."

However, petitioner made no objection at trial regarding this "statement." Because her counsel made no such objection at trial, petitioner now seeks relief under the plain error doctrine. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). In syllabus point 4, in part, in *State v. England*, 180 W. Va. 342, 376 S.E.2d 548 (1998), we explained that the plain error doctrine is "to be used sparingly . . ." Based on our review of the record, we find that petitioner has not demonstrated plain error as to petitioner's "statement." This Court has reasoned that "[b]y its very nature, the plain error doctrine is reserved for only the most flagrant errors." *State ex. rel. Games-Neely v. Yoder*, 237 W. Va. 301, 310, 787 S.E.2d 572, 581 (2016).

In her seventh assignment of error, petitioner argues that the circuit court erred in failing to give sufficient consideration to petitioner's post-trial motions by summarily denying the same. Petitioner fails, however, to articulate the way in which the circuit court abused its discretion in denying petitioner's the post-trial motions and petitioner does not even suggest that her post-trial motions had any merit. This Court has proclaimed that "[a]lthough we liberally construe briefs in determining issues presented for review, issues which are not raised, and those mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996), *See State v. Lilly*, 194 W. Va. 595, 605 n.16, 461 S.E.2d 101, 111 n.16 (1995) (finding that cursory treatment of an issue is insufficient to raise it on appeal). See also *State, Dep't of Health and Human Res. ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs."). Accordingly, we find no error.

8

In her eighth assignment of error, petitioner argues that circuit court's cumulative errors prejudiced petitioner, thus warranting the award of a new trial. As we noted in *State v. Trail*, 236 W.Va. 167, 188 n.31, 778 S.E.2d 616, 637 n.31 (2015), the cumulative error doctrine has no application when there is no error. Here, petitioner "has identified no trial error. Without error, there is no cumulative error, and, thus, no relief." *State v. Jenkins*, No. 18-0283, 2020 WL 201163, at *4 (W. Va.) (Jan. 13, 2020) (memorandum decision).

In her final assignment of error, petitioner argues that she is entitled to a new trial due to the failure of court reporting equipment. Specifically, petitioner contends that errors in the court reporting equipment at trial resulted in "numerous missing portions of the jury selection transcripts relating to issues with prospective jurors, including five jurors who actually served." Petitioner contends that she was deprived of a record concerning the voir dire of five persons who served on the jury in a highly publicized case in which the jury selection was a critical process. However, petitioner's trial counsel did not file any objection or make any motions to strike the five jurors about which petitioner now complains on appeal. Because petitioner made no objections to these jurors, "no omissions from the voir dire transcript" could prejudice petitioner as she waived any arguments or errors associated with these jurors by not objecting to the same at trial. Accordingly, we find no error.

For the foregoing reasons, we affirm the petitioner's convictions.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison